UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARL H. RHOADES, | ) | CASE NO. 1:11CV2699 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| STANDARD PARKING CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

    This matter comes before the Court upon the Motion (ECF DKT #13) of Defendant, Standard Parking Corporation, for Summary Judgment. For the following reasons, the Motion is granted as to all of Plaintiff's claims.

### I. FACTUAL BACKGROUND

    Plaintiff, Carl Rhoades, was an employee of Defendant, Standard Parking Corporation, from February 2002 until May 2009, and then again from March 2010 to May 2010. Standard Parking provides parking management services for various clients and its employees perform a variety of functions, including parking vehicles for customers and clients. Plaintiff was 63 years old when he was originally hired, and 71 in May 2010 when he

last worked for Standard Parking.

From 2002 to 2009, Plaintiff worked at Standard Parking's Cleveland Clinic location. Plaintiff was given Standard Parking's "Handbook and Work Rules" and received "Customer Satisfaction Training." Plaintiff acknowledges that he was aware of the company policy that employees could be terminated for, among other things, being discourteous to customers. Aside from two minor incidents involving other employees in August 2006 and 2008, Plaintiff's employment at the Cleveland Clinic location was devoid of any problems; and there is no other indication he had, at any other time prior to May 7, 2010, violated any policy of Defendant. Plaintiff's supervisors all acknowledge that, aside from May 7, 2010, he was a good and reliable employee and even received gift cards for customer appreciation.

In May 2009, Standard Parking lost its contract with the Cleveland Clinic to a competitor, Healthcare Parking, who took over and made all employment decisions as of May 18, 2009. Due to this lost contract, Standard Parking laid off nearly 200 employees from that location, ranging in age from 21 to 79 years old, a substantial portion of which were under 40 years of age. Although Plaintiff was told not to come to work a week prior to the takeover, Standard Parking paid Plaintiff for the week. Around the time of this mass layoff, another employee, Emil Samalot, alleges that he witnessed Scott Roberts, who was a supervisor, and an unidentified manager state that management intended to get rid of some of the older people, and that one of the older people they wanted to get rid of was Carl Rhoades. There is no indication that Roberts, nor any other unidentified manager was involved in any adverse employment action against Plaintiff.

Less than a year later, Plaintiff was interviewed by Cheryl Radovan for an attendant

position at another Standard Parking location, the Playhouse Lot; and he was later hired per authorization of the regional manager, Matt Neuman.  Plaintiff's employment there was uneventful until May 7, 2010.  At some point during the day, a customer, Brian Hrivnak, pulled into a vacant spot at the Playhouse Lot.  Due to overcrowding in the lot, Plaintiff was trying to move a car from another location into that spot when Hrivnak pulled into it before Plaintiff could do so.  What is undisputed is that Plaintiff first honked his horn a couple of times at Hrivnak and then asked him to move out of the spot several times, each time with a response of "no."  (Rhoades Dep. at 103-105).  Plaintiff continued to argue with Hrivnak that there were too many double-parked cars and that he needed the parking space for the day. (*Id.* at 105-106).  As Hrivnak refused to move his car and walked to the exit, Rhoades uttered "I'll remember that."  (*Id.* at 107).  While that much is undisputed, Hrivnak also claims that Plaintiff slapped his hand on the hood of Hrivnak's vehicle and shouted "you can't f*cking park here," an account that is disputed by testimony from Plaintiff and Madora Funderburk, another employee who witnessed the incident.  *See* Hrivnak Dep. at 10. *But see* Funderburk Aff. ¶ 18; Rhoades Dep. at 118.

      Following this incident, Hrivnak contacted Thomas Hemsath, the liaison for Defendant's client, Playhouse Square, to inform him of the incident.  Both Hrivnak and Hemsath then discussed the incident with Radovan.  According to Radovan, they demanded that Plaintiff be removed immediately.  Radovan proceeded to inform Neuman, who then called the Human Resources Department and after a discussion with a Tareyece Scoggin from that department, Neuman made the decision to terminate Plaintiff.  There is some dispute as to who actually replaced Plaintiff.  The affidavit of Libby Redmon, the Vice President of

Benefits, Compensation and Employee Relations, shows that Louis Poteate, aged 63 at the time, who was an internal candidate for the position, replaced Plaintiff. Plaintiff disputes this and claims that it was actually Makebra Walker, aged 38 at the time, because she was the first new hire after Plaintiff's termination.

## II. STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment should be granted if the pleadings, depositions, documents, electronically stored information, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See, Fed. R. Civ. P. 56(a) and (c). All reasonable inferences must be drawn in favor of the non-moving party in deciding a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Any direct evidence offered by the plaintiff in response to a motion for summary judgment must be accepted as true. *Muhammad v. Close*, 379 F. 3d 413, 416 (6th Cir. 2004). A moving party must conclusively show that there is no genuine issue of material fact for summary judgment to be granted in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A non-moving party has the burden of designating "specific facts or evidence in dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986). This court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996).

## III. LAW AND ANALYSIS

Plaintiff claims that both his 2009 and 2010 terminations were unlawful because they

were motivated by age discrimination. Under 29 U.S.C. § 623(a)(1), it is unlawful for an employer to discharge any individual because of their age. In order to make a claim for age discrimination, an employee may offer either direct or circumstancial evidence of age discrimination. *Lefevers v. GAF Fiberglass Corp.*, 667 F. 3d 721, 723 (6th Cir. 2012). "Age discrimination claims brought under the Ohio Statute are analyzed under the same standards as federal claims brought under the ADEA." *Blizzard v. Marion Tech. College*, 698 F. 3d 275, 283 (6th Cir. 2012) (citing *Wharton v. Gorman-Rupp Co.*, 309 Fed. Appx. 990, 995 (6th Cir. 2009)) (internal quotation marks omitted). "The burden of persuasion is on the plaintiff to show that age was a 'but-for' cause of the employer's adverse action." *Blizzard*, 698 F. 3d at 283 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)) (internal quotation marks omitted).

**A. Plaintiff's Alleged Direct Evidence of Age Discrimination**

Plaintiff asserts in his Complaint that two separate adverse employment actions occurred; one in May 2009 and another in May 2010. In the May 2009 claim, Rhoades puts forward alleged direct evidence of discrimination, specifically a statement made during a conversation between a supervisor and a manager just prior to his 2009 termination. One of the individuals allegedly stated that "they were going to try to get rid of some of the older people," including Carl Rhoades. "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F. 3d 564, 570 (6th Cir. 2003). "Direct evidence of age discrimination alone is not enough to avoid summary judgment in an ADEA action," and there must be proof of a causal connection between the

alleged remarks and the adverse employment action.  *Antonucci v. Goodyear Tire & Rubber Co.*, No. 93-3135, 1994 WL 49569 (6th Cir. Feb. 17, 1994) (citing *Monaco v. Fuddruckers, Inc.*, 1 F. 3d 658 (7th Cir. 1993)).  Even if true, the conversation overheard by Samalot is insufficient to show Defendant discriminated against Rhoades in Plaintiff's 2009 termination.  Standard Parking lost its contract with the Cleveland Clinic, where Rhoades was working, resulting in the termination of employees at that location; and it is undisputed that all hiring decisions there were no longer made by Standard Parking.  Standard Parking's decision to layoff Rhoades was not because of any discriminatory animus, but rather because the employees at that location were being laid off, eliminating the possibility that Standard Parking singled anyone out due to their age.  Without further direct or indirect evidence related to his May 2009 claim,  Plaintiff cannot make a claim for age discrimination for his initial termination.

Also, no direct evidence supports Plaintiff's May 2010 claim.  According to Samalot's affidavit, he overheard Roberts and an unidentified manager state that "they were going to try to get rid of some of the older people, and one of the older people they wanted to get rid of was Carl Rhoades."  This statement, occurring prior to the May 2009 termination, also occurred before they rehired Rhoades again in March 2010.  Even if those two were the decision-makers, which it is undisputed that they are not, any discriminatory animus they or any relevant decision-maker had in May 2009 clearly evaporated by the time Rhoades was rehired in March 2010.  More significantly, statements by non-decisionmakers cannot suffice to satisfy the plaintiff's burden of showing discriminatory animus.  *Bush v. Dictaphone Corp.*, 161 F. 3d 363 (6th Cir. 1998).  Neither Roberts nor any unidentified manager had any role in

Rhoades' firing in May 2010.  The undisputed evidence shows that Neuman and Radovan were involved in the hiring, as well as the firing, in which Scoggin in Chicago was also involved.  (Neuman Dep. at 44-45).  There is no direct evidence to suggest any of those three individuals had or were influenced by somebody with discriminatory animus towards Rhoades based on his age.  Without direct evidence to support a claim for age discrimination, Plaintiff must rely on indirect evidence.

### B. Plaintiff's Indirect Evidence of Age Discrimination

When an age discrimination claim is premised on indirect or circumstantial evidence, the three-step framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) guides the analysis.  *Provenzano v. LCI Holdings, Inc.*, 663 F. 3d 806, 811-812 (6th Cir. 2011); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F. 3d 344, 350 (6th Cir. 1998).  An employee has the initial burden of establishing a prima facie case of age discrimination.  *McDonnell Douglas Corp.*, 411 U.S. at 802.  If met, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  Then, if such a reason is given, the burden shifts back to the employee to show this reason is pretext for discrimination.  *Id.*

#### 1. Plaintiff has shown a *prima facie* case of age discrimination

In order to establish a prima facie case of age discrimination, a plaintiff must demonstrate by a preponderance of evidence that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position; and 4) that circumstances support an inference of discrimination.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  The burden at the prima facie stage is not an onerous one, and it is easily

met. *Cline v. Catholic Diocese of Toledo*, 206 F. 3d 651, 660 (6th Cir. 2000). The prima facie phase "merely serves to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons" for an employee's termination. *Id*. Plaintiff is 72 years of age and thus a member of the protected group under the Age Discrimination in Employment Act. *See* 29 U.S.C. §631(a). It is undisputed that Plaintiff's employment with Defendant, Standard Parking, was terminated in May 2010. In its Motion, Defendant argues that Plaintiff was not qualified for his position and that the circumstances do not support an inference of discrimination.

Defendant contends that Plaintiff was unqualified for his position because he did not adhere to their strict policy of "the customer is always right," and because a client expressly requested his removal. Plaintiff has the burden of demonstrating that he was qualified for his position by meeting the employer's legitimate expectations and performing to his employer's satisfaction. *Warfield v. Lebanon Correctional Inst.*, 181 F. 3d 723, 729 (6th Cir. 1999) (affirming summary judgment against former prison officer who failed to even argue that she was qualified for her position). In determining whether a plaintiff was qualified, the court "must examine plaintiff's evidence independent of the nondiscriminatory reason produced by the defense as its reason for terminating plaintiff." *Cline*, 206 F. 3d at 660-661. The fact that a client requested Rhoades' removal is irrelevant to Plaintiff's qualifications, but rather has relevance to the second stage of the *McDonnell Douglas* analysis. Further, there is enough evidence produced by Rhoades to, at the very least, raise a genuine issue of material fact as to whether he was qualified. The deposition testimony by Rhoades' supervisors and co-workers, including Neuman, Radovan, and Funderburk, shows that he was, in general, a good and

reliable employee, even receiving gift cards for positive "customer appreciation feedback." Aside from the alleged incident of May 7, 2010, there is nothing in the record to suggest Rhoades had violated any policy or was otherwise unqualified for his position.

To satisfy the fourth step of the prima facie stage, a plaintiff must show circumstances that support an inference of age discrimination. *Blizzard v. Marion Technical College*, 698 F. 3d 275, 283 (6th Cir. 2012). An allegation that the plaintiff was replaced by a younger individual supports an inference of discrimination only if the difference in age is significant. *Grosjean v. First Energy Corp.*, 349 F. 3d 332, 336 (6th Cir. 2003). While there is some dispute as to who replaced Rhoades, even if it is the older individual, Poteate, there is still a nine year age difference, well above what courts consider significant. See *Id.* at 340 (eight years can be considered a significant age difference); *Cicero v. Borg-Warner Auto. Inc.*, 280 F. 3d 579, 585 (6th Cir. 2002) ("a seven and one-half year age difference satisfies the fourth prong of [plaintiff's] prima facie case" in an age discrimination claim). This age difference is enough to satisfy plaintiff's burden in demonstrating a prima facie case of age discrimination. See *Id.*. With all four elements, Rhoades has met his burden at the prima facie stage for his May 2010 claim.

### 2. Defendant has proffered a legitimate, nondiscriminatory reason for Rhoades' termination

Once the plaintiff has made a prima facie case of age discrimination, the burden of production shifts to the employer to proffer a legitimate, non-discriminatory reason for their adverse employment action. *Provenzano,* 663 F. 3d at 812. Standard Parking has provided two reasons for Rhoades' removal: namely, that he violated their customer service policy and

that a client demanded his removal.  Standard Parking need not "persuade the court that it was actually motivated by the proffered reasons," but rather simply "raise a genuine issue of fact." *Id.* at 814-815.  "It is sufficient if the defendant's evidence raises a genuine issue of fact" by introducing admissible evidence for a legitimate, non-discriminatory reason.  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-255 (1981).  Defendant has pointed to a substantial amount of evidence, from the depositions of Hrivnak and Rhoades himself, to support its proffered non-discriminatory reason.  Standard Parking's handbook clearly states that "any lack of courtesy on [an employee's] part may result in discharge."   Regardless of the precise details of what occurred, there is some evidence that there was an unpleasant incident in which Rhoades may have been discourteous, resulting in a client's demand for Rhoades' removal from the lot.  This suffices to meet Standard Parking's burden of production for the second step of the *McDonnell Douglas* analysis.

### 3. Plaintiff has failed to demonstrate that Defendant's proffered reason was pretext for age discrimination

With a legitimate, non-discriminatory reason given by Standard Parking, the burden shifts back to Rhoades to show that it is merely pretext for age discrimination.  *Bender v. Hecht's Dept. Stores*, 455 F. 3d 612, 624 (6th Cir. 2006).  At this stage, "the burden of producing evidence of pretext essentially merges with the burden of persuasion, which always lies with the plaintiff."  *Gragg v. Somerset Technical Coll.*, 373 F. 3d 763, 768 (6th Cir. 2004) (quoting *Wilkins v. Eaton Corp.*, 790 F. 3d 515, 522 (6th Cir. 1986)).  Plaintiff may demonstrate pretext by showing that defendant's proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to

warrant the challenged conduct." *Wexler*, 317 F. 3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F. 3d 1016, 1021 (6th Cir. 2000)). Plaintiff contends that Standard Parking's proffered reason has no basis in fact and is insufficient to warrant his termination.

Plaintiff first argues there is no undisputed evidence to support Standard Parking's proffered reason for his termination. This is simply not true. The employee handbook, which Plaintiff readily admits receiving, states that employees are not permitted to argue with customers and that any lack of courtesy may result in discharge. In his own deposition, Plaintiff agrees that the conversation with Hrivnak "wasn't pleasant." In addition to honking his horn at him, Plaintiff's deposition shows he asked Hrivnak to move three times, each one followed by a "no." (Rhoades Dep. at 120). Regardless of whether there was any yelling, swearing, or slapping the hood of a customer's car, there is enough other evidence to show that Plaintiff violated the company policy of being courteous and refraining from arguing with a customer. Defendant's decision was based on facts.

Plaintiff makes a further argument that Standard Parking's proffered reason is insufficient to warrant his termination. This argument also fails. While Plaintiff points to other employees who violated various policies of Standard Parking, including being argumentative with customers, none of those involved an apparent client demand for the removal of that employee. *See* Funderburk Aff. ¶ 7 and 20. While there is no direct testimony from Hemsath, the client's liaison who allegedly demanded Plaintiff's removal, there is plenty of evidence to support the notion that multiple people involved in the decision to terminate Rhoades were under the impression that a client had demanded the removal of Plaintiff. *See* Hrivnak Dep. 68-69, 74-76; Radovan Dep. 41. "As long as an employer has an

honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing Inc.*, 274 F. 3d 1106, 1117 (6th Cir. 2001); see also *Allen v. Highlands Hosp. Corp.*, 545 F. 3d 387, 398 (6th Cir. 2008). "[T]he key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of-action." *Michael v. Caterpillar Financial Services Corp.*, 496 F. 3d 584, 599 (6th Cir. 2007). An employer's decisionmaking process is not required to "be optimal or [leave] no stone unturned." *Id.* It is Standard Parking's policy that if a client demands an employee's removal, that employee must be removed. According to Radovan's deposition, had the client not demanded Plaintiff's removal, she believes he would still have been terminated based on the facts available to her. (Radovan Dep. at 56). In addition, testimony from Neuman, Radovan, and Hrivnak all report that they believed that a client wanted Plaintiff removed. Having heard from Radovan and having called Hemsath, Neuman made a "reasonably informed and considered decision" to terminate Plaintiff during his discussion with Scoggin.

While Plaintiff strenuously argues otherwise, there is no suggestion that Standard Parking's investigation into the incident demonstrated "wilful" errors or aytpical incompetence that suggest discrimination. After talking with a client and a witness, Neuman believed that Plaintiff violated policies and that a client demanded Plaintiff's removal. According to Redmon, Radovan, and Neuman, the situation warranted the termination of an employee. *Contrast* with *May v. Pilot Travel Ctrs., LLC*, No. 2:05-cv-918, 2007 U.S. Dist. LEXIS 484, *20 (S.D. Ohio Jan. 5, 2007) (employer's investigation supported inference of

discrimination because they failed to look at paper trail where one existed); *Rhea v. Wal-Mart Stores, Inc.*, No. 06-13617, 2007 U.S. Dist. LEXIS 84047, *7 (E.D. Mich. Nov. 14, 2007) (where employer violated its own policy of hearing the employee's version before taking any employment action). This particular incident is incomparable to the others in the record proffered by Plaintiff regarding the depth of investigation and consequences, as no other incident involves a client. *Compare* with *Phelps v. Jones Plastic & Engineering Corp.*, 20 Fed. Appx. 352, 357 (6th Cir. 2001) (the fact that other employees engaged in similar, but not "substantially identical" behavior is not enough to show employer's proffered reason was insufficient). Aside from an alleged statement by non-decisionmakers prior to the May 2009 firing and the March 2010 rehiring, there is no other evidence of age discrimination to show that ageism was a "but-for cause" of Plaintiff's termination. To the contrary, Standard Parking has provided enough undisputed evidence for a legitimate, non-discriminatory reason to terminate Plaintiff. Plaintiff has not met his burden, nor raised a genuine issue of material fact to survive a motion for summary judgment.

## IV. CONCLUSION

For all the reasons set forth above, Defendant's Motion for Summary Judgment (ECF DKT #13) is granted as to all claims.

**IT IS SO ORDERED.**

                                              s/ Christopher A. Boyko
                                              **CHRISTOPHER A. BOYKO**
                                              **United States District Judge**

Dated: July 26, 2013